IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM E. NOREEN,

                Petitioner,

     v.                          CASE NO. 04-3004-RDR

U.S. ARMY CLEMENCY AND
PAROLE BOARD, et al.,

                Respondents.

**MEMORANDUM AND ORDER**

This is a petition for writ of habeas corpus, 28 U.S.C. 2241, filed by a former service member now an inmate at the United States Disciplinary Barracks, Fort Leavenworth, Kansas (USDB). Petitioner was granted leave to proceed in forma pauperis, and an order to show cause issued. Respondents filed an Answer and Return, petitioner filed a Traverse, and respondents filed a Response to Traverse. Having considered all the materials filed, the court makes the following findings and order.

**FACTS**

The court finds the following facts from the record and pleadings. In 1972, Noreen was convicted by court-martial of one specification of premeditated murder and two specifications of attempted premeditated murder. His sentence of life imprisonment was ultimately abated to 39 years due to his excellent

institutional behavior. Noreen was first released on parole on March 21, 1988. He agreed as a condition of parole to participate in a substance abuse therapy program. Urine samples collected in February and April of 1998, tested positive for marijuana. As a result, the Department of the Army sent a warning letter to Noreen stating that the Army Clemency and Parole Board (ACPB) would not tolerate continued parole violations. Answer & Return (Doc. 8) (hereinafter A&R), Attach. 9. On September 21, 1998, Noreen's urine sample again tested positive for marijuana, and as a result of this third positive drug screen, the Probation Office submitted a warrant request. Three days later, before the Department of the Army responded, petitioner again tested positive for marijuana. Parole was suspended, and a warrant issued. Noreen was arrested and returned to the USDB, where his preliminary interview was held. A parole violation hearing was ordered, which was conducted on May 19, 1999. The ACPB found Noreen had violated conditions of his parole by submitting marijuana positive urine specimens in 4 months of 1998, failing to show for a scheduled urinalysis in July, 1998, and being untruthful with his U.S. Probation Officer on other dates in 1998 when he denied using marijuana. The ACPB decided to revoke parole; grant credit for time spent on parole from August 11, 1988, to February 3, 1998; and grant re-parole on September 17, 1999.

On November 16, 1999, the Commandant of the USDB issued a "very stern Letter of Warning" to Noreen after he tested positive for Hydrocodone and Hydromorpone on October 11 and 18, 1999. Noreen's urine samples on February 27 and March 6, 2003 tested positive for marijuana. On March 13, 2003, a U.S. Probation Officer requested that a warrant issue. Parole was suspended, and Noreen was arrested and transported to the USDB. He had an additional positive drug screen on March 14, 2003, which was not reported until after his arrest.

Noreen's preliminary interview was conducted at the USDB on May 12, 2003. A Parole Violation Hearing was ordered, which was held on September 3, 2003. Noreen was present and represented by civilian and military counsel. Among the evidence considered was Noreen's testimony; the testimony of his attorneys, Captain Bunch and Mr. Mattaloni; Noreen's sentence and parole history; and 15 exhibits, including the results of lab tests for controlled substances. The Hearing Officer found Noreen had clearly violated the conditions of parole. He recommended revocation and that no credit be granted for service of sentence while on parole. He stated his recommendation to deny credit was "justified due to heinous nature of the drug-related original confining offense and (Noreen's) lack of motivation to abide by the conditions of his parole." A&R, Attach. 20 at 5. The hearing officer viewed Noreen as a risk to the community and to

re-offend because he "committed murder while using drugs in the past" and continues to engage in drug use.

The ACPB determined Noreen violated conditions 6, 8, 12, and 15 of his parole agreement by submitting the two positive urine specimens in October, 1999, and urine specimens which tested positive for marijuana on February 27 and March 6, 2003; and by being untruthful to his probation officer, when questioned about marijuana use.  Petitioner was notified parole was revoked and credit was granted for service of sentence while on parole from September 17, 1999, to October 10, 1999.  A&R, Attach. 21.

**CLAIMS**

Petitioner claims the ACPB improperly caused him to be re-incarcerated.  In support, he alleges (1) they "lacked jurisdiction to bring (him) back" because his "parole and sentence were completed in 1994;" (2) the ACPB erroneously took his street time from 1999 to 2003 "for a charge that petitioner was already punished for;" (3) one urinalysis relied upon by the ACPB was unreliable because it was improperly handled at the parole office and (4) a member of the "Revocation Board" was not impartial as required by federal law because he was a USDB employee.

**STANDARDS OF REVIEW**

4

Generally, a federal court has limited authority to review military proceedings. See Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808 (10th Cir. 1993), cert. denied, 510 U.S. 1091 (1994). The scope of habeas corpus review of decisions by a federal parole agency is similarly narrow. See Phillips v. True, 992 F.Supp. 1255, 1257 (D. Kan.), aff'd, 149 F.3d 1191 (10th Cir. 1998); see also Resnick v. USPC, 835 F.2d 1297, 1301 (10th Cir. 1987); Sotelo v. Hadden, 721 F.2d 700, 702 (10th Cir. 1983). A parole authority's decision to revoke parole will be reversed only if it is arbitrary, capricious or constitutes an abuse of discretion. Sotelo, 721 F.2d at 702; Foster v. Tillery, 996 F.Supp. 1316 (D.Kan. 1998); see Kell v. USPC, 26 F.3d 1016, 1019 (10th Cir. 1994); Turner v. USPC, 934 F.2d 254, 256 (10th Cir.), cert. denied, 502 U.S. 885 (1991); Phillips, 992 F.Supp. at 1257. The court's inquiry is not whether the parole board's decision is "supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons." Misasi v. USPC, 835 F.2d 754, 758 (10th Cir. 1987); Foster, 996 F.Supp. at 1318; Soloman v. Elsea, 676 F.2d 282, 290 (7th Cir. 1982). For revocation, all that is required is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by the terms and

conditions of the release.  Mack v. McCune, 551 F.2d 251, 254 (10th Cir. 1977).  These principles in cases determining claims against the United States Parole Commission are equally applicable in cases against the ACPB, the federal agency determining Army parole matters.

**ACPB LACKED JURISDICTION**

The court first considers Noreen's claim that the ACPB lacked jurisdiction to arrest and return him to the USDB.  In support of this claim, Noreen "contends his sentence was completed in 1994, with deductions for good time earned from 5 Oct. 1971 to 11 Aug. 1988, 16 years," and "parole should have ended at that time." Traverse (Doc. 9) at 1.  Apparently, he is adding the 16 years of good time he allegedly earned while in prison, to the nearly 16 years of incarceration from 1971 through 1988, for a total of 32 years, and then figuring 7 years remained on his 39-year sentence and elapsed in 1994 before his first parole violation.

This claim is based upon Noreen's presumption that his earned good time of 16 years was tantamount to service of his sentence and could not be forfeited after he was released on parole.  His presumption is incorrect.  In a prior case with similar claims based upon the same military regulations, this court upheld the military's interpretation that awards of good time credit do not change a military prisoner's Full Term Expiration Date (FTD).

6

Young v. Nickels, 59 F.Supp.2d 1137, 1141 (D. Kan. 1999). Rather, the FTD remains unchanged, unless a parole term is shortened by military officials or service of the sentence is interrupted by inoperative time such as a violated parole term. Id. Accumulation of good time positively affects when a prisoner may be conditionally released, but has no further effect once an inmate accepts parole. Id. Under the pertinent military regulations, petitioner's parole term would have run to his FTD, not the FTD less days awarded for good time. Id. at 1142. In short, his 39-year sentence did not expire in 1994, just 22 years after his conviction.

In McKinney v. Taylor, 358 F.2d 689, 690 (10th Cir. 1966), the Tenth Circuit Court of Appeals upheld the forfeiture of previously earned good time credit after the revocation of civilian parole, reasoning that "good time does not reduce the period of original sentence but 'instead determines how much of the sentence must be spent within the confines of the prison'." Patterson v. Knowles, 162 F.3d 574, 575 (10th Cir. 1998), *citing* McKinney, 358 F.2d at 690. The Tenth Circuit held in Patterson that the USPC was "free to 'recommit a parole violator to prison for a length of time the same as the unexpired term' without taking into account good time credit earned prior to parole release. Id. The military's similar policies, that the FTD is not changed by good time, and revocation of parole may result in

7

forfeiture of previously earned good time credit, are likewise reasonable and lawful.

Moreover, Noreen was on notice at the time he entered his parole agreements that the date his parole term would expire was many years beyond 1994. The Certificate of Parole issued in 1988 and executed by Noreen plainly stated that his term of parole would be effective until October 5, 2010. The Certificate of Parole issued when Noreen was released on parole in 1999 stated his second term was effective until July 8, 2011. Noreen also acknowledged and agreed in both certificates that forfeiture of his previously earned good time could result from violation of parole conditions:

> I also understand and agree that if I violate any of the conditions of my parole set forth above, I may be apprehended, returned to military control, forfeit all good conduct time previously earned, and be held to serve the remainder of my sentence to confinement.

A&R, Attachs. 6, 18. The court concludes petitioner's claim that his sentence expired in 1994 has no factual or legal merit.

Petitioner briefly argues his case should be governed by the 1968 version of military regulations on parole and good time (DODI 1325.4), rather than the 1988 version relied upon by respondents. He asserts that application of the 1988 version to his case is retrospective and more onerous because the 1968 version is more favorable to him. However, he provides no convincing argument or authority in support. Petitioner states

8

he is aware of this court's ruling in Young v. Nickels, 59 F.Supp.2d 1137 (D. Kan. 1999), but ignores that arguments identical to his were rejected therein. Id. at 1139-40 (and cases cited therein). This court found in Young that the regulations governing military parole were not without ambiguity, as Noreen emphasizes. But, it also concluded therein that the ACPB's practice under either version was the same -- Young's previously earned good time was waived by him accepting and violating parole.

Petitioner asks how any benefit of earned good time is received, when an inmate serves his parole term without revocation. The answer is that he received the benefit of his earned good time in the calculation of his minimum release date, the date on which conditional release would have been required had he not previously been released on parole. The court concludes that the ACPB's determination of petitioner's FTD as in 2011 was in accord with its regulations and is not shown to have been arbitrary or capricious or a violation of any federal or constitutional law.

**IMPROPER DENIAL OF STREET TIME CREDIT**

The court next considers petitioner's claim that the ACPB erroneously denied street time credit from 1999 to 2003 "for a charge that petitioner was already punished for." Petitioner

9

appears to argue in his Traverse that the stern warning he received following positive drug results in October, 1999, constituted punishment for that violation conduct, and that his compliance until his next positive drug test entitled him to credit for street time from October 10, 1999 to February 27, 2003. He contends he is being punished twice for the 1999 violations. Petitioner's argument has no logical basis since his parole was not revoked in 1999. The warning letter was not punishment, and rather than having been punished Noreen was allowed to remain on parole.

Once Noreen committed further violations despite the warning, parole was revoked and credit was denied from the time he was granted re-parole until October 10, 1999, the day before his first violation. Department of Defense Directive 1325.4, Section (J)(8)(b)(May 19, 1988), Credit for Service of Sentence on Parole, as well as Army Regulation 15-130 Sec.(4-5.)(f)(3)(Sept. 11, 1989) provide that a prisoner whose parole is revoked "shall receive credit for time spent on parole, except" if the ACPB finds that "the parolee was not materially in compliance with the conditions of parole," it may order the forfeiture of time during which the parolee was not in compliance. Thus, the ACPB had clear authority to forfeit "street credit" for periods during which the parolee was not in material compliance with parole conditions. <u>Yearwood v. Nickels</u>, 201 F.3d 450, *2, 1999 WL

10

1015566 (10th Cir. 1999, unpublished)(copy attached) *citing* DOD 1325.4 Sec. J8(b)(1988). It is also clear that where there have been sporadic periods of misconduct, the ACPB may deny street time credit from the date of the first episode of misconduct. Yearwood, 201 F.3d at *2, *citin*g Foster v. Tillery, 996 F.Supp. at 1319. The court rejects petitioner's claim that his street time was erroneously forfeited, and finds that the ACPB's decision to deny credit during his second term of parole after his first violation on October 10, 1999, was in accordance with its regulations and was not arbitrary, capricious, or in violation of any federal law.

**UNRELIABLE DRUG TEST**

The court finds no sufficient factual or legal basis for petitioner's assertion that evidence of his drug use was unreliable. In support of this claim, Noreen alleges that the urine sample he provided on February 27, 2003, remained in a room for 5 to 10 minutes before it was sealed. Respondents present the affidavit of the parole officer who participated in the testing of Noreen on this particular day. He avers he observed Noreen urinate into the container, and then seal the bottle. Respondent also exhibits a copy of a Chain of Custody for Drug Analysis form signed by Noreen certifying that the specimen was sealed in his presence, and not adulterated. Noreen does not

11

allege facts which adequately refute respondent's exhibits.

Moreover, it does not appear that Noreen fully exhausted administrative remedies on this evidentiary challenge. The record of the Preliminary Hearing provides that Noreen challenged the validity of the lab tests, alleging in particular that the sample collected on February 27, 2003, "was left unattended for approximately 10 minutes." A&R, Attach. 20,J at 3. However, the record also indicates that at the Parole Violation Hearing Noreen and his counsel admitted the February, 2003 test was correct. Even if this court were convinced by Noreen's allegations that this one urine sample was tainted, he would not be entitled to relief because the record clearly indicates revocation was based on additional, independent violations. <u>Yearwood</u>, at \*\*3.

**<u>HEARING OFFICER NOT IMPARTIAL</u>**

Petitioner claims that the officer who presided over his parole violation hearing was not neutral and unbiased. Respondents allege that Hearing Officer Pursel, a USDB employee, was appointed to act as a neutral hearing officer by the ACPB Chairperson, in accordance with AR15-130 Para. 4-5d(3). They further note that the ACPB reviewed all the same materials as Pursel and had the discretion to act on its own accord, which it did in granting some credit for time on parole contrary to Pursel's recommendation. The fact alone that Pursel was an

12

employee of the USDB does not establish bias or his inability to conduct a fair parole revocation hearing. Petitioner's claim is not supported by any other facts showing actual bias or prejudice. Petitioner does not allege that the hearing officer was involved in investigating his violations or any other aspect of his case.

The court additionally finds from the administrative record that petitioner was accorded the other minimum requirements of due process as set forth in Morrissey v. Brewer, 408 U.S. 471 (1972), in that he was provided written notice of the claimed violations of parole; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; and a written statement as to the evidence relied upon and reasons for revoking parole. Id. at 489. In sum, this court's review of the administrative record reveals that there was a rational basis in the record for the ACPB's conclusion that petitioner violated parole and for its decision to deny street time credit. This court finds no evidence in the record that the ACPB's exercise of its discretion was arbitrary or capricious, particularly since he had been using drugs when he violently murdered a young mother and attempted to murder her two young children, has continued to use drugs, and his occupation outside of prison is long-haul truck driver.

For all the foregoing reasons, the court concludes petitioner

is not entitled to federal habeas corpus relief.

IT IS THEREFORE BY THE COURT ORDERED that this action is dismissed and all relief denied.

DATED:  This 27th day of April, 2005, at Topeka, Kansas.


                                    s/RICHARD D. ROGERS
                                    United States District Judge